# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CHESTER ENGINEERS, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION 10-00486-KD-B |
| | ) |
| **SIDERIDRAULIC SYTEMS S.p.A.,** | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This case is before the Court on Plaintiff Chester Engineers, Inc.'s Motions to Dismiss Defendant Thyssenkrupp Steel USA's Counterclaim and Amended Counterclaim and supporting memorandums. (Docs. 26, 27, 39, 40, 47). Plaintiff's motions and supporting memorandums have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Based upon a careful review of Plaintiff's motions and supporting memorandums, Defendant Thyssenkrupp Steel USA, LLC's briefs in opposition (Docs. 34, 46), and the pleadings on file, the undersigned RECOMMENDS that Plaintiff's motions be GRANTED, in part, and DENIED, in part.

## I. Background

In 2008, Defendant/Counterclaim Plaintiff Thyssenkrupp Steel USA (hereinafter "TKS") entered into an Architectural/Engineering Services contract with Defendant Sideridraulic, under which Sideridraulic was to provide to TKS professional engineering services related to the design and

construction of a Secondary Water Treatment Unit (hereinafter "water treatment unit"), for a steel mill that TKS is constructing in Mobile County, Alabama. (Doc. 33). Sideridraulic in turn contracted with Plaintiff/Counterclaim Defendant Chester Engineering, Inc. (hereinafter "Chester") to assist with professional engineering services. (Id.) In 2008, a dispute arose between Chester, Sideridraulic and TKS regarding Chester's performance obligations and Chester's claim that it was entitled to additional compensation. (Doc. 1). On May 4, 2010, senior officers of Chester, Sideridraulic, and TKS met in an attempt to resolve the disputes. (Id.) The instant litigation followed.

Plaintiff Chester filed suit against Sideridraulic and TKS. (Id.) According to Chester, as a result of the May 4, 2010 meeting between senior officers for the parties, a firm verbal agreement was reached which incorporated Change Notice #57R1 for site services by Chester to continue through August 31, 2010, and provided for a $100,000 advance payment to Chester by TKS. The agreement also provide that Sideridraulic was to pay Chester an additional $200,000 in compensation, and that TKS was also to pay directly to Chester $140,000 on or before September 1, 2010. Further, upon issuance of a bond, Sideridraulic was to promptly release to Chester the retainange which was to be paid by TKS. (Id. at p. 3). According to Chester, in reliance on the parties' verbal agreement, Chester continued its on-site work; however, Sideridraulic and TKS have breached the agreement.

2

Accordingly, Chester seeks to enforce the parties' alleged 2010 settlement agreement.(Id. at 3-5).

TKS filed a one-count counterclaim against Chester based on Chester's work on the water treatment unit. (Doc. 10) According to TKS, Chester's contract with Sideridraulic obligated Chester to provide the "detail engineering design" for the water treatment unit, while Sideridraulic was to perform the "basic engineering design." TKS further alleges that under the contract, which benefitted TKS, Chester was responsible for delivering to TKS Design Packages for certain work by certain dates based in part on Siderdraulic's P & ID drawing, that Chester was aware that TKS was relying on Chester's timely work product in order to publish for bid certain packages of work for construction of the water treatment unit, that Chester was aware that time was of the essence and that TKS would suffer monetary damages in the event of a breach by Chester, that Chester's work was not performed in a timely manner and was "typically rife with errors," and that Chester's actions resulted in a delay of TKS's construction of the water treatment unit and the entire TK steel mill project, as well as added costs to TKS. TKS alleges that Chester is thus liable for the damages incurred as a result of said breach. (Doc. 10).

Plaintiff Chester filed a motion seeking the dismissal of TKS' counterclaim. (Doc. 27). In the motion, Chester asserts that TKS' counterclaim is due to be dismissed because TKS failed to allege that (1) TKS and Chester had a contract which TKS

3

performed under or (2) that TKS is a direct, intended third-party beneficiary of any contract to which Chester is a party. Thus, TKS' counterclaim should be dismissed for failure to state a claim upon which relief can be granted. (Doc. 27). In response to Chester's motion, TKS filed an Amended Counterclaim, and a response in opposition. (Docs. 33, 34). TKS's Amended Counterclaim reasserts many of the factual allegations contained in the original counterclaim, and includes claims that 1) Chester negligently breached its duties of care owed to TKS as a design professional, and thereby caused damages to TKS for which it is liable, 2) Chester, with reckless or intentional disregard for TKS' rights, consciously breached its duties of care as a design professional owed to TKS, and caused TKS damages for which it is liable, 3) Chester owes TKS indemnity for damages incurred by TKS as a result of Chester's delinquencies, errors and omissions that have resulted in liability for TKS, and 4) to the extent the Court finds the existence of an agreement between Chester and TKS, Chester breached the terms of that agreement, and its duties owed to TKS in that contract, and caused damages to TKS. (Doc. 33).

Chester filed a second Motion to Dismiss in response to TKS' Amended Counterclaim (Doc. 40). In this motion, Chester alleges that TKS's negligence action should be dismissed because TKS "makes only conclusory allegations that Chester breached duties owed to TKS, while failing to allege a duty ever existed between the two." (Doc. 40, p. 3). Chester also argues that TKS'

4

wantonness claim should be dismissed because TKS has failed to plead any facts indicating that Chester acted recklessly or with consciousness that injury would likely result from any of Chester's actions. (Doc. 40, p. 7). Chester further asserts that TKS's breach of contract claim is due to be dismissed because TKS has not alleged the existence of a contract between TKS and Chester, that TKS performed its duties under the contract, or that TKS is a third-party beneficiary status under the contract. Chester also alleges that TKS's indemnity claim is due to be dismissed as there was no contract between TKS and Chester; thus, no contractual indemnity exists, and due to the fact that there is no right of indemnity in tort. (Doc. 40, p. 11).

In TKS' response in opposition (Doc. 46), TKS argues that Chester owed a number of contractual obligations directly to TKS, TKS relied on Chester's performance of these obligations, and that it was reasonably foreseeable by Chester that its negligent performance of these responsibilities would result in harm to TKS. TKS also argues that Chester's knowledge of the necessity and importance of the water treatment unit to the construction of the mill, and knowledge of TKS's reliance on Chester to perform its contractual obligations, coupled with Chester's numerous acts in failing to properly perform, demonstrate that Chester acted with consciousness that its failure to perform would result in injury to TKS. Thus, Chester is liable for wantonness. TKS further alleges that it is entitled to indemnity under Alabama law because it has been

exposed to liability and has incurred liability as a result of Chester's actions. Finally, TKS asserts that to the extent the Court determines that a settlement agreement exist, Chester breached the terms of the agreement, and that TKS is a third party beneficiary of the subcontract between Chester and Sideridraulic.

## II. <u>Discussion</u>

### A. Legal Standard

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts the non-moving party's factual allegations as true. <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). Moreover, the rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In <u>Ashcroft v. Iqbal</u>, 556 U.S. --,129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009), the Supreme Court explained that while a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations in order to withstand attack, the complaint must however contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. Id. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

**B. Analysis**

**1. Negligence**

Turning first to TKS' negligence claim, the undersigned finds that TKS has alleged facts sufficient to establish a negligence claim. In Cincinnati Ins. Co. v. Barber Insulation, Inc., 946 So. 2d 441 (Ala. 2006), the Alabama Supreme Court recognized that:

> "Although plaintiff may be barred from recovering defendant's contract with another, plaintiff may nevertheless recover in negligence in defendant's breach of duty where defendant negligently performs his contract with knowledge that others *are relying* on proper performance and the resulting harm is reasonably foreseeable." Providence Hospital, 454 So. 2d at 501(quoting Federal Mogul Corp. v. Universal Constr. Co., 376 So. 2d 716, 721 (Ala. Civ. App. 1979). . .
>
> [F]actors to be considered "[i]n deciding whether to impose a *duty* in a construction context."... include: "(1)[T]he extent to which the transaction was intended to affect the other person; (2) the forseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct, and (6) the policy of preventing future harm." 454 So. 2d at 503....

946 So. 2d at 446-447 (internal quotation and citation omitted) (emphasis in original).

The Court in Cincinnati held that the plaintiff insurance company's contention that its insureds, the homeowners, had relied upon a contract between the homeowners' general contractor and the subcontractor hired for the framing and siding work in conjunction with the construction of a lake house fell short of establishing the required particularized reliance. In so deciding, the court observed that the homeowners had never heard of the subcontractor before the litigation; thus, they could not have relied upon the subcontractor. The court held that in the absence of reliance, and in consideration of the six factors used to determine whether to impose liability in the construction context, there was no basis for the imposition of liability as between the insurance company, who was subrogated to the rights of the homeowners, and the subcontractor.

Unlike the facts in the Cincinnati case, in the case at hand, TKS alleges that it reasonably relied upon Chester to perform the professional engineering services required under Chester's contract with Sideridraulic. According to TKS, Chester was well aware that TKS would utilize Chester's drawings in order to elicit bids, and that that incorrect drawings and/or drawings submitted in an untimely fashion would not only delay

8

the mill project, but would also result in additional costs to TKS. TKS argues that Chester negligently breached the professional duty which it undertook and is thus liable for the damages sustained by TKS. At this stage of the proceedings, where the facts are to be viewed in the light most favorable to the plaintiff, the undersigned finds that TKS's allegations that Chester breached its professional engineering duties undertaken in its contract with Sideridraulic, that TKS was damaged as a result of said breach, that TKS properly relied upon Chester's proper performance of its obligations, and that it was foreseeable that such damage would result are sufficient to establish a negligence claim under Alabama law. See QORE, Inc. v. Bradford Bldg. Co., Inc., 25 So. 3d 1116, 1124-25 (Ala. 2009) ("Even when a third party is not in privity with the parties to a contract and is not a third-party beneficiary to the contract, the third party may recover in negligence for breach of a duty imposed by that contract if the breaching party negligently performs the contract with knowledge that others are relying on proper performance and the resulting harm is reasonably foreseeable.")(citation omitted). Thus, Chester's motions to dismiss the negligence claim are due to be denied.

**2. Wantonness**

TKS has likewise alleged facts sufficient to state a wantonness claim under Alabama law. Wantonness is defined as

"conduct which is carried on with a reckless or consciousness disregard for the rights or safety of others." Ala. Code § 6-11-29(b)(3) (1975). Wantonness involves the "'conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.'" Temploy, Inc. v. Nat'l Council on Compensation Ins., 650 F. Supp. 2d 1145 (Ala. 2009)(quoting Alfa Mut. Ins. Co. v. Roush, 723 So. 2d 1250, 1256 (Ala. 1998). In this action, TKS alleges that Chester acted recklessly and with wantonness in breaching its professional engineering duties undertaken in its contract with Sideridraulic. According to TKS, Chester was fully aware that its failure to timely and correctly perform its duties under the contract would delay the project and result in additional costs to TKS; however, Chester completely disregarded it duty with full knowledge of the damage which would result to TKS. TKS's allegations, which are taken as true at this stage of the proceedings, are sufficient to establish a wantonness claim under Alabama law. Thus, Chester's Motions to Dismiss this claim are due to be denied at this stage.

### 3. Indemnity

Turning next to TKS's indemnity claim, the undersigned finds that TKS's Amended Complaint fails to state a claim for indemnity. In the Amended Complaint, TKS alleges as follows:

10

> TKS has incurred liability from change orders requested by TKS contractors, and granted by TKS, because of Chester's delinquencies, errors and omissions.
>
> Chester owes TKS indemnity for these damages incurred because of Chester's delinquencies, errors and omissions that have resulted in liability for TKS.

(Doc. 33).

Alabama courts have recognized an implied contract of indemnity and a common law action for indemnity where (1) the indemnitee is without fault, (2) the indemnitor is the responsible party, or the primarily responsible party, and (3) the indemnitee has been required to pay out money by a judgment of a court. <u>Allstate Ins. Co. v. Amerisure Ins. Cos.</u>, 603 So.2d 2d 961, 963 (Ala. 1992). In <u>Stone Bldg Co. v. Star Elec. Contractors, Inc.</u>, 796 So.2d 1076 (Ala. 2000), the Alabama Supreme Court held that a claim for indemnity could lie in the absence of a judgment. The Court stressed that while "[i]ndemnity against losses does not cover losses for which the indemnitee is not liable to a third person, and which the indemnitee improperly pays[, a] person legally liable for damages who is entitled to indemnity may settle the claim and recover over against the indemnitor, even though he has not been compelled to judgment to pay the loss. In order to recover, the indemnitee settling the claim must show that the indemnitor was

legally liable, and that the settlement was reasonable." Id. at 1090 (quoting 41 Am. Jur. 2d Indemnity § 46 (1995)).

In its Amended Complaint, TKS has not alleged that Chester was contractually obligated to indemnify TKS for damages incurred as a result of Chester's alleged performance deficiencies. Moreover, while TKS asserts that it was injured by Chester's alleged performance deficiencies, TKS' Amended Complaint does not contain any factual allegations that Chester's alleged performance deficiencies caused injury to a third party, that TKS was legally obligated to compensate the third party for said injury, or that the amount paid as compensation was the result of a judgment or a reasonable settlement. In the absence of said factual allegations, TKS has failed to state an indemnity claim under Alabama law.

### 4. Breach of Contract

The final claim before the Court is TKS's breach of contract claim. A breach of contract is defined as a "'failure, without legal excuse, to perform any promise which forms the whole or part of a contract. To establish that a breach of contract occurred, [a plaintiff] must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the [defendant's] nonperformance, and (4) damages.'" Brooks v. U.S. Xpress, Inc., 2008 U.S. Dist. LEXIS 30571 (S.D. Ala. 2008) (quoting Irvin v.

12

Cmty. Bank, 717 So. 2d 369, 371 (Ala. Civ. App. 1997). Under Alabama law, a nonparty to a contract can seek to enforce the contract by establishing that "the contracting parties intended, upon execution of the contract, to bestow a *direct*, as opposed to an *incidental*, benefit upon the third party." Ex parte Stamey, 776 So. 2d 85, 92 (Ala. 2000)(quoting Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co., 619 So. 2d 1328, 1329 (Ala. 1993))(emphasis added)). In Cincinnati Ins. Co. v. Barber Insulation, Inc., 946 So. 2d 441 (Ala. 2006), the Alabama Supreme Court held that:

> [I]it is generally recognized that in the
> construction-contract context, the owner
> of the building being constructed is
> typically regarded as merely an *incidental*
> beneficiary of the contract between
> the general contractor and its subcontractor,
> and, therefore, has no enforceable rights
> under a subcontract. See, e.g., Restatement
> (Second) of Contracts § 302 comment e,
> illustration 19 (1981)("A contracts to erect
> a building for C. B then contracts with A
> to supply lumber needed for the building.
> C is an incidental beneficiary of B's promise,
> and B is an incidental beneficiary of C's
> promise to pay A for the building."); 9 Arthur
> L. Corbin, *Corbin on Contracts* § 779D (1951).

946 So. 2d at 443. The Court further observed that notwithstanding the general rule, "'[i]t would be *possible* for [the general contractor] to make his contract with [a subcontractor] in such terms as to show that [the general contractor] was making it for [the owner's] benefit and intended

13

[the owner] to have an enforceable right." Id. at 444-445. As an example of a situation in which a nonparty could establish its third party beneficiary status in the construction context, the Court cited the case of Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc., 901 So. 2d 84 (Ala. 2004), which involved a written contract with a clear provision extending protection to third parties. The subcontract in Vesta Fire expressly provided that "The Subcontractor warrants to the Owner, Architect, and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless required or permitted by the Subcontract Documents, that the work of this Subcontract will be free from defects not inherent in the quality required or permitted, and that the work will conform with the requirements of the Subcontract documents. . . ." Id. at 445. The Court in Cincinnati held that unlike the Vesta Fire case, the facts before it involved an oral agreement evidencing no intent to benefit directly third parties.

The undersigned observes that in the instant action, the breach of contract claim contained in TKS's Amended Complaint is not the model of clarity. While TKS alleges that it entered into a contract with Sideridraulic for engineering services related to the design and construction of TKS's water treatment unit, and that Sideridraulic in turn contracted with Chester to assist in providing the engineering services and benefitted TKS

14

as a result, there is no allegation that TKS was a third party beneficiary entitled to enforce the subcontract between Chester and Sideridraulic. Additionally, there is no allegation that in entering into their contract, Sideridraulic and Chester intended to bestow a direct benefit upon TKS or that the contract between Sideridraulic and Chester contains clear language which extends the protection of the contract to TKS. In fact, in the section of the Amended Counterclaim entitled "Breach of Contract", TKS avers as follows:

> 56. Counter-Plaintiff TKS incorporates all preceding allegations of this Counterclaim as if re-stated here.
>
> 57. To the extent that this Court finds the existence of an agreement between Chester and TKS, TKS alleges in the alternative that Chester also breached the terms of that agreement and its duties owed to TKS in that contract, causing damages to TKS.

(Doc. 33).

This language does not reference any third party beneficiary status nor does it allege any intent on behalf of the parties to the contract to bestow a direct benefit upon TKS. Thus, the Amended Complaint, as drafted, is not sufficient to support a third party beneficiary claim based upon the agreement between Sideridraulic and Chester, and is due to be dismissed as a result.

15

However, TKS has alleged facts sufficient to state a breach of contract claim with respect to the alleged settlement agreement. As noted supra, in Chester's Complaint, Chester alleges that Sideridraulic, TKS and Chester entered into a binding settlement agreement, that Chester performed its duties under the agreement, that Sideridraulic and TKS failed to perform their duties under the settlement agreement, and that Chester has been damaged as a result. In its Amended Counterclaim, TKS alleges that to the extent the Court determines that a contract exists between Chester and TKS, Chester has breached its duties under the contract, that TKS has fulfilled its obligations and that TKS has been harmed as a result of Chester's failure to perform. (Doc. 33). Such allegations, if proven, would support TKS's breach of contract claim with respect to the settlement agreement. See Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007) (party must plead enough factual matter, that if taken as true, suggests that the elements of the cause of action will be met). Accordingly, at this juncture of the proceedings, the undersigned finds that TKS has alleged sufficient facts to support its breach of contract claim based on the settlement agreement.

### III. Conclusion

For the reasons set forth above, the undersigned recommends that Chester's Motions to Dismiss TKS' Amended Counterclaim be denied as to the negligence claim, wantonness claim, and breach of settlement agreement claim, and granted as to the indemnity claim and the third party beneficiary claim.

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this **29th** day of **March, 2011.**

                                                **/s/ SONJA F. BIVINS**
                                        **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.  *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[1] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[1] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this **29th** day of **March, 2011.**

                                      /s/ SONJA F. BIVINS
                              **UNITED STATES MAGISTRATE JUDGE**